**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------
SHIVA STEIN,                                        :
                                                    :
      Plaintiff,                               :  Civil Action No. 22-cv-3574
                                                    :
v.                                                  :  **COMPLAINT FOR VIOLATIONS OF**
                                                    :  **SECTIONS 14(a) AND 20(a) OF THE**
PLANTRONICS, INC., ROBERT                           :  **SECURITIES EXCHANGE ACT OF**
HAGERTY, MARV TSEU, KATHY                           :  **1934**
CRUSCO, BRIAN DEXHEIMER,                            :
GREGGORY HAMMANN, GUIDO                             :  **JURY TRIAL DEMANDED**
JOURET, TALVIS LOVE, MARSHALL                       :
MOHR, DANIEL MOLONEY, DAVE                          :
SHULL, and YAEL ZHENG,                              :
                                                    :
      Defendants.                              :
------------------------------------------------------  :

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Plantronics, Inc. ("Plantronics or the "Company") and the members Plantronics's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of Plantronics by affiliates of HP Inc. ("HP").

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on May 2, 2022 with the United States Securities and Exchange

Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby the Prism Subsidiary Corp. ("Merger Sub"), a wholly-owned subsidiary of HP, will merge with and into Plantronics with Plantronics surviving as a wholly-owned subsidiary of HP (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on March 25, 2022 (the "Merger Agreement"), each Plantronics stockholder will receive $40.00 in cash (the "Merger Consideration") for each Plantronics share owned.

1. As discussed below, Defendants have asked Plantronics's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Morgan Stanley & Co. LLC ("Morgan Stanley") in support of its fairness opinion.

2. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

3. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Plantronics's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

4.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

5.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

6.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the Company trades on the New York Stock Exchange, headquartered in this District, and the Company's proxy solicitor, Innisfree M&A Incorporated, is also headquartered in this District.

**PARTIES**

7.     Plaintiff is, and has been at all relevant times, the owner of Plantronics stocks and has held such stocks since prior to the wrongs complained of herein.

8.     Individual Defendant Robert C. Hagerty has served as a member of the Board since 2011 and is the Chairman of the Board and the Former Interim Chief Executive Officer ("CEO").

9.     Individual Defendant Marv Tseu has served as a member of the Board since 1999 and is the Vice Chairman and Former Lead Independent Director.

10.    Individual Defendant Kathy Crusco has served as a member of the Board since 2018.

11.    Individual Defendant Brian Dexheimer has served as a member of the Board since 2008.

3

12. Individual Defendant Gerggory Hammann has served as a member of the Board since 2005.

13. Individual Defendant Guido Jouret has served as a member of the Board since 2018.

14. Individual Defendant Talvis Love has served as a member of the Board since 2021.

15. Individual Defendant Marshall Mohr has served as a member of the Board since 2005.

16. Individual Defendant Daniel Moloney has served as a member of the Board since 2018.

17. Individual Defendant Dave Shull has served as a member of the Board since 2020.

18. Individual Defendant Yael Zheng has served as a member of the Board since 2020.

19. Defendant Plantronics is a Delaware corporation and maintains its principal offices at 345 Encinal Street, Santa Cruz, California 95060. The Company's stock trades on the New York Stock Exchange under the symbol "POLY."

20. The defendants identified in paragraphs 10-18 are collectively referred to as the "Individual Defendants" or the "Board."

21. The defendants identified in paragraphs 10-19 are collectively referred to as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

**A.   The Proposed Transaction**

22. Plantronics designs, manufactures, markets, and sells integrated communications and collaborations solutions for corporate customers, small businesses, and individuals in the United States, Europe, the Middle East, Africa, the Asia Pacific, and rest of the Americas. Its principal product categories include headsets, which comprises wired and wireless communication headsets; voice that includes open session initiation protocol and native ecosystem desktop phones,

and conference room phones; video conferencing solutions and peripherals, including cameras, speakers, and microphones designed to work with a range of unified communication and collaboration, unified communication as a service, and video as a service environments, including RealPresence collaboration solutions of infrastructure to endpoints that allows people to connect and collaborate; and content sharing solutions. The Company also offers services that include video interoperability, and hardware and support for our solutions and hardware devices, as well as professional, hosted, and managed services; and cloud management and analytics software, which enables information technology administrators to configure and update firmware, monitor device usage, troubleshoot, and gain understanding of user behavior. It sells its products through value-added resellers, integrators, direct marketing resellers, service providers, direct and indirect resellers, network and systems integrators, enterprise distributors, wireless carriers, and mass merchants, as well as through both traditional and online retailers, and e-commerce channels under the Poly, Plantronics, and Polycom brands. Plantronics was incorporated in 1961 and is headquartered in Santa Cruz, California.

23. On March 28, 2022, the Company and HP jointly announced the Proposed Transaction:

> **PALO ALTO, Calif., and SANTA CRUZ, Calif., March 28, 2022** – HP Inc. (NYSE: HPQ) today announced a definitive agreement to acquire Poly (NYSE: POLY), a leading global provider of workplace collaboration solutions, in an all-cash transaction for $40 per share, implying a total enterprise value of $3.3 billion, inclusive of Poly's net debt.
>
> The acquisition accelerates HP's strategy to create a more growth-oriented portfolio, further strengthens its industry opportunity in hybrid work solutions, and positions the company for long-term sustainable growth and value creation.
>
> The rise of hybrid work is creating sustained demand for technology

that enables seamless collaboration across home and office environments. Approximately 75% of office workers are investing to improve their home setups to support new ways of working[1]. Traditional office spaces are also being reconfigured to support hybrid work and collaboration, with a focus on meeting room solutions. Currently, there are more than 90 million rooms, of which less than 10% have video capability[2]. As a result, the office meeting room solutions segment is expected to triple by 2024[3].

"The rise of the hybrid office creates a once-in-a-generation opportunity to redefine the way work gets done," said Enrique Lores, President and CEO of HP. "Combining HP and Poly creates a leading portfolio of hybrid work solutions across large and growing markets. Poly's strong technology, complementary go-to-market, and talented team will help to drive long-term profitable growth as we continue building a stronger HP."

Dave Shull, Poly CEO and President, added: "I am thrilled about the opportunity this represents for Poly, our employees, partners and customers. The combination gives us an opportunity to dramatically scale, reaching new markets and channels, supercharging our innovation with a like-minded partner. This transaction offers compelling and certain value for our shareholders and speaks to the hard work done by our teams to become a recognized leader in helping businesses everywhere meet the challenges of a generational disruption in the way people work."

In a more hybrid world, cloud platforms like Zoom and Microsoft Teams will play an important role in innovating new experiences. Eric Yuan, Founder and CEO of Zoom added, "Highest quality audio and video has become an essential component of work across every industry, whether in an office, at home, or on the go. Bringing the Poly and HP offerings together will unlock new opportunities to partner with Zoom and turn any space into a hub for dynamic video collaboration."

Poly will help drive the growth and scale of HP's peripherals and workforce solutions businesses. Peripherals represent a $110 billion segment opportunity growing 9% annually, driven by the need for more immersive experiences. Workforce solutions represent a $120 billion segment opportunity that is growing 8% annually, as companies invest in digital services to set up, manage, and secure more distributed IT ecosystems. Poly's devices, software and services, combined with HP's strengths across compute, device management, and security, creates a robust portfolio of hybrid meeting solutions.

> Poly is a leader in video conferencing solutions, cameras, headsets, voice and software. Together, HP and Poly will deliver a complete ecosystem of devices, software, and digital services to create premium employee experiences, improve workforce productivity, and provide enterprise customers with better visibility, insights, security, and manageability across their hybrid IT environments.
>
> HP expects the transaction to be immediately accretive to HP's revenue growth, margins, and non-GAAP EPS at close. With the expanded value proposition of a complete hybrid work solution, combined with HP's scale and go-to-market capabilities, HP expects to realize substantial revenue synergies in peripherals as well as meeting room and workforce solutions. HP will be able to cross-sell across its global commercial and consumer sales channels, while driving incremental sales from combining Poly's products with HP's PC portfolio. As a result, HP expects to achieve $500 million of revenue synergies by FY25 and accelerate Poly's revenue growth to an approximately 15% CAGR over the first three years after closing. In addition, HP expects the transaction to improve Poly's operating margins by approximately six percentage points from current levels by FY25, driven by scale efficiencies across supply chain, manufacturing and overhead.
>
> The transaction is expected to close by the end of calendar 2022, subject to Poly stockholder approval, required regulatory clearances, and the satisfaction of other customary closing conditions. HP will finance the transaction through a combination of balance sheet cash and new debt.
>
> This transaction is consistent with HP's capital returns program target. HP remains committed to aggressively buying back shares of at least $4 billion in FY22, and to returning significant capital to shareholders while continuing to invest in growth.

\* \* \*

24. The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that Plantronics's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     The Materially Incomplete and Misleading Proxy Statement**

25.     On May 2, 2022, Plantronics filed the Proxy Statement with the SEC in connection with the Proposed Transaction.  The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

26.     The Proxy Statement fails to provide material information concerning financial projections by Plantronics management and relied upon by Morgan Stanley in its analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and Morgan Stanley with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Plantronics management provided to the Board and the Financial Advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

27. For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: EBITDA and Unlevered Free Cash Flow, but fails to provide line items used to calculate the metrics ***and/or*** a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

28. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

29. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

30. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

31. With respect to Morgan Stanley's *Publicly Trading Comparables Analysis*, the Proxy Statement fails to disclose the financial metrics for each company selected for the analysis.

32. With respect to Morgan Stanley's *Discounted Equity Value Analysis*, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying the AV/CY2022E EBITDA range of 8.0x to 11.0x; (ii) the estimated future diluted shares outstanding; (iii) the inputs and assumptions underlying the discount rate of 13.1%

33. With respect to Morgan Stanley's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the terminal values for Plantronics; (iii) the inputs and assumptions underlying the use of perpetuity growth rates of 0.0% to 2.0%; (iv) the inputs and assumptions underlying the use of the range of discount rates of 8.3% to 9.2%; (v) the Company's weighted average cost of capital; and (vi) the number of fully diluted shares of Company common stock outstanding as of March 23, 2022.

34. With respect to Morgan Stanley's *Precedent Transaction Multiples Analysis*, the Proxy Statement fails to disclose the financial metrics for each transaction selected for the analysis, including: (i) the aggregate value of each transaction and (ii) each target company's NTM EBITDA.

35. With respect to Morgan Stanley's *Illustrative Precedent Transaction Premiums*, the Proxy Statement fails to disclose the transactions selected and the premia paid for those transactions.

36. With respect to Morgan Stanley's *Equity Research Analysts' Future Price Targets*, the Proxy Statement fails to disclose the fourteen equity research analysts and their target stock prices.

37. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

38. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

39. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

40. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

41. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

42. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

43. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate

remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

44. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45. The Individual Defendants acted as controlling persons of Plantronics within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Plantronics, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Plantronics, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

46. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

47. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Plantronics, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue


contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

48. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

49. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

50. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

51. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.  Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.  Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.  Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.  Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: May 3, 2022

**MELWANI & CHAN LLP**

By:  */s/ Gloria Kui Melwani*
Gloria Kui Melwani
1180 Avenue of the Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*